UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA            )
                                    )
                                    )
vs.                                 )
                                    )  No. 1:13-cr-10017-RWZ-2
                                    )
JONATHAN DASILVA,                   )
                                    )
                   Defendant.       )


BEFORE:  THE HONORABLE RYA W. ZOBEL


SENTENCING HEARING




John Joseph Moakley United States Courthouse
Courtroom No. 12
One Courthouse Way
Boston, MA 02210
Wednesday, May 27, 2015
3:20 p.m.




Brenda K. Hancock, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, MA 02210
(617)439-3214

1    APPEARANCES:

2

3         US ATTORNEY'S OFFICE - MA
          By: AUSA Emily O. Cummings
4         J. Joseph Moakley U.S. Courthouse
          1 Courthouse Way
5         Suite 9200
          Boston, MA 02210

6

7         LAW OFFICES OF KEVIN J. REDDINGTON
          By: Kevin J. Reddington, Esq.
8         1342 Belmont Street
          Suite 203
9         Brockton, MA 02301
          On behalf of the Defendant.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following proceedings were held in open court

2     before the Honorable Rya W. Zobel, United States District

3     Judge, United States District Court, District of Massachusetts,

4     at the John J. Moakley United States Courthouse, One Courthouse

5     Way, Courtroom 1, Boston, Massachusetts, on

6     Wednesday, May 27, 2015):

7          THE CLERK:  All rise.  Good afternoon.  Please be

8     seated.

9          This is The United States v. Jonathan Dasilva,

10    Criminal No. 13-10017.  If counsel could please identify

11    themselves for the record.

12         MS. CUMMINGS:  Good afternoon, your Honor.

13         THE COURT:  Ms. Cummings for the Government, and

14    Mr. Reddington for the defendant.

15         MR. REDDINGTON:  Good afternoon, your Honor.

16         THE COURT:  Welcome back.

17         MS. CUMMINGS:  Thank you.

18         THE COURT:  I don't believe there were any objections.

19    Yes, there were objections.

20         Objection 1, the reference to drug-trafficking

21    organization and Objection 2 about Aiding and Abetting, I

22    believe that the Probation Officer who prepared the report is

23    correct on those.  The first piece, Paragraph 9, wasn't really

24    talking about the defendant, was simply describing the

25    situation, and the second one he was charged with the offense

1    and with Aiding and Abetting, and so it correctly describes

2    that.  Objection Number 3 having to do with the 11(c)(1)(C)

3    plea and the equivalent of marijuana, I think the Probation

4    Officer is correct on that one.  The marijuana equivalents is

5    defined in the Rules and Regulations in the *Guidelines*, and

6    unless there is an arithmetic mistake, there is nothing there.

7         And with respect to Paragraph 37, the Offense Level

8    calculation, as she points out, is based on what the count of

9    conviction is, which is Felon in Possession of a Firearm, even

10   though he didn't himself possess it at the time at the

11   courthouse.  He was Aiding and Abetting in that respect, but

12   that still counts as possession.

13        The statement that the firearm would be used, again,

14   it was based on the telephone call in which the gun was ordered

15   to be taken there for the purpose to be used.  The directing of

16   actions of Mr. Brandao and Gomes, that, too, is based on the

17   telephone conversation that Mr. Dasilva had.

18        The stolen vehicle is based on using a rental car

19   without authority, which I think pretty much equates.  And

20   Objection Number 9 having to do with the charge in Georgia,

21   it's there.  I don't know what the evidence is of that,

22   Ms. Marcy.  But, as she points out, it makes no difference at

23   all to the calculations --

24        MR. REDDINGTON:  I agree with that.

25        THE COURT:  -- so I think we can just ignore it.

1          In any event, the calculation is equally irrelevant,

2     because we have an 11(c)(1)(C) plea --

3          MR. REDDINGTON:  That's right.

4          THE COURT:  -- and I will hear the Government.

5          MS. CUMMINGS:  Thank you, your Honor.  As the Court's

6     aware, the range in the (C) plea recommendation is 120 to 168

7     months.  The Government stood before your Honor on numerous

8     occasions at this point and tried not to nitpick over terms of

9     years which may be inconsequential to actual substantive

10    changes taking place within the defendants to avoid them being

11    back before the Court today, and I'm not going to stray from

12    that argument.  Mr. Dasilva is very charismatic, he's very

13    charming, he's exceedingly capable.  He comes from a huge

14    family that supports --

15         THE COURT:  Is all here.

16         MS. CUMMINGS:  -- is all here and supports him, almost

17    flirting with hero worship.  It's easy to see why.  He's

18    capable of absolutely anything he puts his mind to.

19    Unfortunately, with that support has come unconditional support

20    for whatever criminal activities he's involved in.  Many, many

21    excuses, histories of excuses for why poor Jonathan is, once

22    again, distributing drugs or out on the street terrorizing

23    Woodward Avenue or shooting at other gang members.  It's never

24    his fault, it's always part of his upbringing, nobody

25    understands because they're not from the community.  It gets

1    old, it gets tired, and it provides Mr. Dasilva with the

2    excuses he needs to engage in the same behavior.  And, like I

3    said, this is somebody who is capable of probably amazingly

4    good things that would help his community, would benefit his

5    community, would help younger kids who are out on the same

6    streets he grew up in making the bad decisions he made.  I

7    don't know if 120 months is enough to make him make that

8    decision for himself, that he wants to be a positive in

9    people's lives, instead of continuing to be a negative.  I

10   don't know if 168 months is what it will take, but it's the

11   Government's hope that he really starts making better

12   decisions.

13          I'm not convinced that this is going to matter either

14   way with Mr. Dasilva.  I'm not convinced that he doesn't think

15   he pulled a fast one by charming his way into some sort of

16   below-guideline sentence.

17          Just so he and I are clear, I'm not convinced that you

18   accept responsibility for what you did and you're making

19   decisions to do better things in your future.

20          But the Government really hopes that finally he's sick

21   of this, that he wants to be back out on the street, he wants

22   to be back with his family, he wants to make better decisions.

23          Throughout this case I've had an opportunity to speak

24   to many of his friends and family members.  They are an amazing

25   group of individuals, like I said repeatedly, capable of great

1     things, and I hope I never see him again in this context, I

2     hope whatever sentence the Court imposes today is enough to

3     make him finally get his act together and start being a

4     positive member of his community.

5              THE COURT:  Thank you.

6              Mr. Reddington.

7              MR. REDDINGTON:  Thank you, your Honor.  Your Honor,

8     first of all, I would indicate, obviously, that I'm requesting

9     that your Honor, on behalf of Mr. Dasilva, would impose the

10    120-month sentence, which I think is a significant and a very

11    serious one.

12             I also want to note that, as I stand before you today,

13    I have great respect for the prosecutor, the way the Government

14    handled this case.  I spoke many, many times, I spent hours

15    dealing with the prosecutor in trying to come to grips with the

16    case dealing with Mr. Dasilva and talking about the case, going

17    back to Ms. Cummings.  And, quite frankly, Ms. Cummings even

18    spoke directly to Mr. Dasilva, and I think there was a good

19    dialogue there.

20             I do feel, your Honor, sincerely, that there have been

21    things that have happened in Jonathan's life since he has been

22    incarcerated that have really struck him right between the

23    eyes, and I do believe that he has taken it to heart.  I do

24    agree and echo with the comments of the Government.  One of the

25    most incredible families that I've ever had occasion to work

1    with (indicating).  His family, his cousins, his mother, his

2    father are very, very supportive, very, very nice people.  Your

3    Honor has the letters from, I believe, his aunt.  Your Honor, I

4    think, when you allowed Mr. Dasilva to go to the funeral, I

5    believe that he was placed in the aunt's custody.  You could

6    see that she was a legitimate, standup person, a good influence

7    and a strong person in his life.

8         Jonathan does not have, as the PSR well put together

9    indicates, much of an education.  He has his GPS (ph).  But,

10   nevertheless, he is one of the most intelligent guys that I've

11   represented.  He's attune, he's aware, he has got a clarity,

12   and he knows the dire circumstance that he has before this

13   Court.

14        He knows, as I would suggest, that he is at a

15   crossroads.  And the reason I say that is that he has accepted

16   responsibility, and in the sense of accepting responsibility,

17   if you look, as I know your Honor has, at basically the

18   evidence, he considered himself in this situation to be a weed

19   guy.  All of the controlled buys, except for the OxyContin

20   controlled buys, you can see that he's a weed guy, he's a weed

21   guy, he's a weed guy.  I believe that he was picked up on a

22   wire where a guy wanted to buy some powder.  He said, "I don't

23   deal in the white stuff," but he did, nevertheless, make a

24   recommendation of another person that would be able to handle

25   that, which is why, under the concept of conspiracy, he is

1    aware of that and has certainly accepted his responsibility.

2         Now, I've been up to Middleton enumerable times, and

3    I've really got to know him very well, and, not that it really

4    weighs heavily with the Court, but I really like this kid.  I

5    do agree with the Government, he has got a lot to offer.

6    Whether or not at some point he ever gets into social work and

7    he tries to talk to kids, he would move kids, I know he would.

8    And he has never been a "Poor me" guy.  He's never used excuses

9    with me.  He's always been up front about, "I know what I did,

10   and I accept the responsibility."

11        But what really impacted on him was the death of the

12   grandfather, and I got the call from him.  He was emotional.  I

13   saw him.  I spoke to Ms. Cummings.  We filed a motion before

14   this Court to have him be able to go to that wake, the

15   services, or to the viewing.  He was absolutely dumbstruck, is

16   the only way I can express it, that you, your Honor, showed the

17   faith and the confidence and the respect that he would be

18   allowed to leave this courthouse with a lengthy potential

19   sentence ahead of him, in the event the matter went to trial,

20   and when I saw him leave the courthouse and he was wearing a

21   different outfit than the orange jumpsuit, and he went and he

22   did do the viewing, and then he came back, as your Honor

23   instructed, I think 15 minutes early, that has never left him.

24   That has had such a significant impact on him.  The power that

25   a Federal Judge has, and the fact that you had the faith that

1   he would come back here, I think is something that really moved

2   him.

3         The fear that he has that he would lose his

4   grandfather, who was, I think you know, 82 years of age and he

5   was not well.  So, he has lost someone while he was

6   incarcerated, has a very strong probability that he could lose

7   someone else that's very near and dear to him while he's

8   incarcerated, and he does not, as counsel indicated, he does

9   not want to do this anymore.  He does not want to be involved

10  with this type of activity.  He wants to truly try to

11  contribute.  And I'm not just saying this.  I mean, he wants to

12  try to contribute to his family, to his community, and he wants

13  to get out of this activity.

14        A 120-month sentence, a 10-year sentence, would allow

15  under the 3553 factors that I know your Honor considers and

16  weighs very heavily, I think is not more than what would be

17  necessary to punish him.  It's a serious punishment.  Your

18  Honor can look at his record.  He does not have incarceration.

19  Most of his convictions were weed-related.  I believe he was in

20  Brockton Superior Court in front of Judge Carol Ball in his

21  last case, and he was given probation and told to live in

22  Georgia for a period of time, which he did.

23        He has never been in jail.  I'm not going to say he's

24  concerned about federal prison, but he certainly knows that

25  it's going to be a bit of an ugly road ahead of him.  But he

1    does have a positive approach.  He wants to get an education,

2    he wants to get training, he wants to be able to have contact

3    with his family, obviously while incarcerated, and then, of

4    course, on supervised release he would be subject to the terms

5    and conditions that your Honor would impose.

6            It just strikes me, your Honor, that the Government

7    has come so far in this case trying to reach this guy, I think

8    he's well aware of his exposure before you today.  I would ask

9    that you impose the low end of the 11(C).  That, I think, would

10   be a significant sentence, but it would recognize the fact that

11   he does have qualities and attributes that are worthwhile

12   consideration, and I think he'd make you proud, and I would ask

13   that you impose the lower end of the sentence, your Honor.

14           THE COURT:  Mr. Dasilva.

15           THE DEFENDANT:  Dear Honorable Judge Zobel --

16           THE COURT:  Can you speak up, please.  Thank you.  In

17   fact, if you sit down, and then the microphone, which is behind

18   the computer, can come over.

19           But you need to turn it on, Mr. Reddington.  There is

20   a switch behind at the back-end.  No.  It's on the stem, the

21   stem part.

22           THE CLERK:  Right there.

23           MR. REDDINGTON:  Got it.

24           THE COURT:  There it is.

25           MR. REDDINGTON:  Thank you.

1          THE COURT:  Now bring it down a little bit.  There you

2     go.  Thank you.

3          THE DEFENDANT:  Dear Honorable Judge Zobel, I stand

4     before you today with sincere remorse for the irresponsible and

5     dangerous conduct I engaged in that led me to my arrest in

6     January 2013.  I know that there was no excuse or satisfactory

7     explanation for my actions, and I accept complete

8     responsibility for what I have done.

9          I also extend my heartfelt apologies to my family,

10    especially my mother, the Courts and my community.  I am truly

11    sorry.  Since the incident, I have spoken to a community leader

12    as well as a bishop, which has helped me gain insight on my

13    contribution to the community's harm.  I have had a lot of time

14    to reflect on the decision I have made that placed me in this

15    position where I forfeit all of my privileges.

16         I recently experienced a moment where I suddenly felt

17    appreciation for minor things such as reading and receiving a

18    newspaper.  I realize that I was consumed with cutting corners

19    to have all the things hard-working people labored for.  I was

20    embarrassed of my community instead of embracing my roots and

21    finding ways through the trials and struggles.  I surrendered

22    my soul to the streets.  I also realized that I was presented

23    with two choices:  to become a statistics or rise above it.  I

24    chose to become a statistics.

25         I in no way acted in the best interests of no other

1    than myself.  I have shamed and publicly embarrassed my family

2    and everyone that matters to me.  I tried to live above the

3    law, and now I'm at the mercy of the law.  I have had a lot of

4    time to think things through and go through some heartbreaking

5    days and experience eyes-open moments.  I recently experienced

6    a great loss.  My grandfather suffered a massive heart attack

7    and died the past January.  I wasn't able to offer and receive

8    support during this time.  It pains me to imagine my

9    grandfather thought of me prior to his death.  It also scares

10   me to know that there's a huge chance that I may never spend

11   another Thanksgiving dinner with my grandmother, Spratis (ph).

12   She's 82.

13        I am no model for my younger brothers and little

14   sisters.  I currently have not one accomplishment to present to

15   my siblings.  I am far from success stories.  But, at the other

16   end of the spectrum, I am informing the Courts and my family

17   that I recognize that I still have an opportunity to positively

18   outline my future and add to this chapter of my life.  I am

19   currently enrolled in a GED program, and I have discovered a

20   different world through literature.

21        Your Honor, I humbly ask you to consider this letter

22   with selection of my punishment and respectfully pray for the

23   best.  Thank you for your wisdom and integrity.

24             THE COURT:  Thank you.

25             MR. REDDINGTON:  I just wanted your Honor to know that

1    I have the rough draft of that.  These are his words.  This is

2    not something that -- he really put a lot of work into trying

3    to express his thoughts to you.

4         THE COURT:  Thank you.  Let me explain to the family

5    where we are.  There are various ways in which the sentencing

6    process goes forward.  Mostly, first of all, there is a

7    Presentence Report, and under the rules under which this Court

8    operates there are what are called *Guidelines*, and they look at

9    the offense and they look at the defendant's criminal record,

10   and then they come up with numbers.  We were talking about

11   these numbers earlier.  And usually it is then up to the judge

12   to decide what the sentence should be in terms of what these

13   calculations show, and the judge can go higher or lower or

14   sentence as the *Guidelines* suggest.

15        This case is different, because here Mr. Dasilva and

16   the Government have entered into an agreement, and that

17   agreement says that the defendant agrees and the Government

18   agrees that the lowest sentence I can impose is 10 years, and

19   the highest is 168 months, I think.  The sentences are in terms

20   of months, which gets sort of silly when you are talking about

21   the length of time here.

22        So, I agreed at the time of the changing of the plea

23   that I would consider that, and I have the power to sentence

24   either above what they decided or below what they decided, but

25   if I do that, then the agreement is off, and then Mr. Dasilva

1    would have to start all over again, and then who knows what the

2    sentence would be after that.

3         So, in a sense I have bound myself to the terms of

4    their agreement, and I will impose a sentence at the low end of

5    the agreement, which was, as I said, 120 to 168 months, which

6    appears to be -- that is the low end -- appears to be the real

7    agreement among the parties, in any event.  I just want you to

8    understand that there is a certain understanding by Mr. Dasilva

9    that that would be the sentence, and I have no intention of

10   changing it and making it more difficult for either of the

11   parties.

12        I should also note that I did receive a letter from

13   Ms. Fisher, a lovely letter, which I have read and taken into

14   account as well.

15        So, in accordance with the terms of the Plea

16   Agreement, I sentence you to a term of imprisonment of

17   120 months, with credit to be given for the time that you have

18   served since your arrest.  You are also sentenced to a period

19   of supervised release of 4 years.  You shall pay a Special

20   Assessment of $500, but no fine, because I do not believe you

21   have the ability to pay a fine, financial ability to pay a

22   fine.

23        The period of supervised release is subject to a

24   number of conditions:  that you shall not commit any crimes,

25   either local, state or federal, while you are on supervised

1   release, which is sort of like parole.  And I know that you

2   have had some difficulty with parole in the past, but you will

3   not this time around, right?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  You shall refrain from the use of any

6   unlawful and controlled substances.  You shall submit to the

7   collection of a DNA sample, as directed by the Probation

8   Office, and comply with the standard conditions.  You are

9   prohibited from possessing any firearms or other dangerous

10  weapons.

11           And I want to explain to you that "possession" is

12  different from "ownership."  "Possession" means that you have

13  the ability to decide at any moment in time what should happen

14  to that gun or that object.  This pencil, for example, is owned

15  by the Government, but I have possession of it now.  I can give

16  it to you, I can throw it away, I can do whatever I want.  So,

17  "possession" is really a far broader concept, and you cannot

18  have possession.  Among other things, you would commit another

19  crime by doing that, and I can tell you that the sentences for

20  possession of firearms when you have a criminal record go up

21  like this (indicating).  So, don't.

22           You shall participate in a program of substance-abuse

23  counseling, as directed by the Probation Office, and submit to

24  such testing, as directed by Probation as well, but they can't

25  do that more than 104 times a year.

1           So, those are the conditions of supervised release.

2    And I will, if you want me to, recommend to the Bureau of

3    Prisons that he be allowed to participate in the 500-Hour

4    Program --

5           MR. REDDINGTON:  Yes, absolutely.

6           THE COURT:  -- without any idea that they will take my

7    recommendation.

8           MR. REDDINGTON:  Thank you, your Honor.

9           THE COURT:  Are there any other recommendations you

10   want me to make to the Bureau of Prisons?

11          MR. REDDINGTON:  No, your Honor.

12          THE COURT:  So, that is it.

13          And, Mr. Marshal, the defendant is in your custody on

14   the sentence of the Court.

15          And I do not advise you about your right to appeal,

16   because you have given up your right to appeal, so there is not

17   any.

18          MR. REDDINGTON:  Thank you, your Honor.

19          MS. CUMMINGS:  Your Honor, I think the forfeiture just

20   needs to be announced --

21          THE COURT:  I have signed it.

22          MS. CUMMINGS:  -- as part of the sentence.

23          THE COURT:  Yes.  There is an Order of Forfeiture that

24   I have signed.

25          MR. REDDINGTON:  Right.  We had addressed that before,

1    and the vehicles were not part of that forfeiture.  That's a

2    separate matter with the civil forfeiture claim, if you will.

3              THE COURT:  Well, the vehicles are included here.

4              MR. REDDINGTON:  Well, no.  We had talked about that,

5    because I have a claim, and I've been saying that for a long

6    time.

7              THE COURT:  I have an Audi Sedan, currency $3,900 --

8              MR. REDDINGTON:  The currency --

9              THE COURT:  -- jewelry.

10             MR. REDDINGTON:  Right.  And some of the jewelry was

11   being returned.

12             THE COURT:  And another currency of $31,000.

13             MR. REDDINGTON:  Right.  And I'm asking that the

14   vehicles not be subject to a forfeiture, only because I have a

15   claim that has been accepted as relates to the vehicles with

16   the civil forfeiture, and we've got documentation that, for

17   example, Sally, who owns one of the vehicles, got all the

18   records to show where she obtained the funds.  The vehicle is

19   not something that was involved in a conspiracy.  She made her

20   payments every month, she went to her insurance company to get

21   the money, and I thought that we had talked about this.  I know

22   the last time we were in court, I think the record would bear

23   it out, that I did put on the record that we had no problem

24   with the forfeiture except for the vehicles.

25             MS. CUMMINGS:  They're included within the Plea

1    Agreement.  I think they facilitated some --

2         THE COURT:  There's only one vehicle.

3         MS. CUMMINGS:  Well, the Audi is included in the Plea

4    Agreement, and it was used as a facilitation of a deal on

5    August 24, 2012.  The 2005 Audi --

6         MR. REDDINGTON:  Which one is it that you're referring

7    to?

8         MS. CUMMINGS:  Just the one listed in the Plea

9    Agreement.

10        MR. REDDINGTON:  I just want to know who it's owned

11   by, if it's owned by Sally.

12        MS. CUMMINGS:  2005 Audi A6.

13        THE COURT:  I'm sorry.  What paragraph?

14        MS. CUMMINGS:  It's Page 7, Paragraph 2.

15        MR. REDDINGTON:  Again, see, that is --

16        THE COURT:  It says "any vehicles seized."

17        MR. REDDINGTON:  It may seem like a small point, but

18   that's a vehicle that's owned by his father.  It's not owned by

19   Mr. Dasilva.  If he was using it on one occasion -- it just

20   seems the equities would lie, if I would be able to at least

21   deal with the civil forfeiture, because I did put the claim in

22   for both vehicles.  The other vehicle is not subject to the

23   forfeiture in this Plea Agreement.  As I say, it's a 2005, a

24   10-year-old car.  It's not a huge asset at stake, but it means

25   a lot to the father.

1          THE COURT:  Well, it says he waives any claims he may

2    have to any vehicles --

3          MR. REDDINGTON:  Exactly.

4          THE COURT:  -- seized or other personal property that

5    were seized.

6          MR. REDDINGTON:  And then when we were in front of you

7    on the 11(C), I do remember, now that you read that, that the

8    issue was resolved that he, meaning "he," meaning Jonathan

9    Dasilva, waives any claim he would have to these vehicles.  He

10   doesn't own the vehicle.  He doesn't have any ownership

11   interest in his dad's vehicle.

12         MS. CUMMINGS:  I mean, that's what it says in the Plea

13   Agreement.  If his father's filing a separate claim, that's not

14   covered under this --

15         MR. REDDINGTON:  All right.  Fine.  That would resolve

16   it, then.  He waives whatever interest, if any, he has in the

17   vehicle.

18         THE COURT:  But does the order of forfeiture change

19   anything in that?  Does he still have the right to say, "It

20   wasn't mine"?

21         MS. CUMMINGS:  It doesn't matter if it was his or not.

22   It facilitated a drug transaction, which I believe is the

23   theory that it was seized under.  I am not privy to what's been

24   going on between Mr. Reddington and the Civil Division

25   regarding that, but I'm assuming they are working it out

1    amongst themselves, if it is to be worked out.

2             MR. REDDINGTON:  Right.  I filed a claim within the

3    time frame, and they acknowledged receipt of the claim then and

4    we were waiting for this case to be resolved to proceed?

5             MS. CUMMINGS:  So, then --

6             THE COURT:  So, it's okay?

7             MR. REDDINGTON:  I would rather that it be excised, if

8    you will, from the forfeiture.  I think that would make it much

9    cleaner, but if the Government objects to that --

10            MS. CUMMINGS:  Yeah, we object to that.  The

11   forfeiture dealt with that section of the Plea Agreement, so

12   without knowing the specifics --

13            THE COURT:  Well, the Plea Agreement doesn't deal with

14   any specific car.

15            MS. CUMMINGS:  No, it does.

16            THE COURT:  Where?

17            MS. CUMMINGS:  Page 7.

18            THE COURT:  It says "vehicles."

19            MS. CUMMINGS:  The bottom of Paragraph 2.

20            THE COURT:  Oh, yes, it does deal with the Audi.

21   You're right.

22            MR. REDDINGTON:  So, if the order of the Court could

23   indicate that Mr. Dasilva waives any interest that he has and

24   forfeits any interest in that vehicle, I think that would be

25   something I could work with.

1          THE COURT:  Have you seen the order?  Which way are

2     you going?

3          MR. REDDINGTON:  Right here.  Does that work?

4          THE COURT:  Yes.

5              (Document provided to Mr. Reddington)

6          MR. REDDINGTON:  Yeah, his interest in the vehicle.

7     So, I think that would be fine.

8          THE COURT:  Okay.  Thank you.

9          MR. REDDINGTON:  Thank you, your Honor.

10          THE COURT:  Court is in recess.

11       (WHEREUPON, the proceedings adjourned at 3:50 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3

4              I, Brenda K. Hancock, RMR, CRR and Official Reporter

5      of the United States District Court, do hereby certify that the

6      foregoing transcript constitutes, to the best of my skill and

7      ability, a true and accurate transcription of my stenotype

8      notes taken in the matter of *United States v. Dasilva*, No.

9      1:13-cr-10017-RWZ-2.

10

11

12

13

14     November 20, 2015              */s/ Brenda K. Hancock*
                                      Brenda K. Hancock, RMR, CRR
15                                    Official Court Reporter

16

17

18

19

20

21

22

23

24

25